02-09-314-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-09-00314-CV

 

 


 
 
 Donald Joe Bishop and Carolyn Bishop
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 A.B. Auto Salvage, Steven Scott Harcourt, A.B.’s
 Used Auto and Truck Parts, Inc., Jesse Small, Ltd., Jesse Small, A.B. Ford,
 A.B. Chevy, A.B.’s Ford and A.B.’s Chevrolet
 
 
  
 
 
 APPELLEES
 
 


 

 

----------

FROM THE 96th
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Appellants
Carolyn Bishop and Donald Joe Bishop (“Joe”) appeal from the trial court’s take
nothing judgment on their claims against Appellees A.B. Auto Salvage; Steven
Scott Harcourt; A.B.’s Used Auto and Truck Parts, Inc.; Jesse Small, Ltd.;
Jesse Small; A.B. Ford; A.B. Chevy; A.B.’s Ford; and A.B.’s Chevrolet.  The Bishops
bring seven issues on appeal.  Because we hold that we must presume that the omitted
portions of the reporter’s record support the trial court’s judgment, we
affirm.

The
Bishops sued Appellees for assault, negligence, intentional infliction of
emotional distress, and failure to warn, based on an altercation at A.B. Auto
Salvage, a salvage yard owned by Small and managed by Harcourt.  On September
10, 2005, the Bishops went to the salvage yard so that Joe could return a bell
housing he had purchased there.  While Carolyn sat in the waiting area,
Harcourt and Joe went to the back of the shop.  Harcourt and Joe engaged in a
heated disagreement over the bell housing, which escalated when Harcourt threw
the bell housing.

At
trial, the Bishops contended that Harcourt threw the bell housing at Joe, while
Appellees asserted that he threw the bell housing at the floor, and it bounced off
the concrete floor and hit Joe’s ankle.  Joe testified that salvage yard
employees then physically attacked him; Appellees, on the other hand, asserted
that Joe struck Harcourt in the face in response to Harcourt’s throwing of the
bell housing.  The Bishops contended that Joe was beaten so severely that his
heart stopped beating, and only his pacemaker’s defibrillator brought him back
to life.  Appellees said that Joe and Harcourt “grappled,” Harcourt fell over
backwards causing Joe to fall on top of him, and Joe passed out.

After
close of evidence in the jury trial, the trial court granted a directed verdict
for Small on all claims against Small individually and for all Appellees except
Harcourt on the Bishops’ other claims.  The jury then found that Harcourt did
not commit an assault that proximately caused Joe’s injuries.  The jury also
found that Harcourt and Joe were both negligent, attributing thirty percent of
the negligence to Harcourt and seventy percent to Joe.  The trial court’s
judgment ordered that the Bishops take nothing on their claims.  After the
trial court denied the Bishops’ motion for new trial, they filed this appeal.

In
the Bishops’ first issue, they assert that the trial court erred by submitting
jury question number one, which departed from the pattern jury charge.  In
their second issue, the Bishops argue that the trial court erred by making a
docket entry indicating that they had nonsuited their claims against A.B. Auto
Salvage.  They complain that by making this docket entry, the trial court
improperly dismissed their claim against A.B. Auto Salvage.  In their third
issue, the Bishops argue that jury misconduct and a “circus atmosphere” at
trial require a new trial.

The
Bishops’ next three issues relate to evidentiary rulings by the trial court.  In
their fourth issue, the Bishops argue that the trial court erred by permitting
the testimony of Ruben Garcia because he had not been disclosed as a witness
and by permitting Garcia to sponsor and testify about certain documents.  In
their fifth issue, the Bishops contend that the trial court erred by
suppressing and refusing to admit certain impeachment evidence against Jesse
Small.  In the Bishops’ sixth issue, they argue that the trial court erred by
refusing to admit evidence of what they contend is a “Mary Carter type
agreement” among Appellees.  In their seventh and final issue, the Bishops
assert that the cumulative error in this case so fundamentally flawed the trial
process as to require a new trial.

Appellees
filed briefs addressing the merits of the Bishops’ issues and also pointing out
that the Bishops requested only a partial reporter’s record but did not file a
statement of points or issues that they would present on appeal.[2] 
Under appellate procedure rule 34.6, in requesting the court reporter to
prepare the reporter’s record, the appellant must designate the portions of the
proceedings to be included.[3]  If an appellant requests
only part of the reporter’s record, “the appellant must include in the request
a statement of the points or issues to be presented on appeal,” and the
appellant “will then be limited to those points or issues.”[4] 
Requiring a statement of points or issues gives the appellee notice of the
issues being appealed so that the appellee can designate additional parts of
the record that may be necessary to support its defense.[5]  Without a specific statement
of points or issues, the appellee is “left to guess which additional portions
of the evidence should be included in the statement of facts.”[6]

When
the appellant complies with the rule, “[t]he appellate court must presume that
the partial reporter’s record designated by the parties constitutes the entire
record for purposes of reviewing the stated points or issues.”[7] 
But when the reporter’s record is necessary to the appeal[8]
and the appellant requests only a partial record but never submits a statement
of points or issues, we must presume that the omitted portion of the record
supports the trial court’s judgment.[9] 
This result “ordinarily has the practical effect of destroying an appellant’s
right to appeal.”[10]

The
Bishops did not file a statement of points in this case and did not request a
complete reporter’s record until after Appellees had filed their briefs; this
court denied that untimely request.[11]  With only a partial
record in this case, and without the application of the presumption in rule
34.6(c)(4), we cannot determine, for example, whether any error in the jury charge
was harmful;[12] whether there was jury
misconduct or a “circus atmosphere” at trial and, if so, whether it harmed the
Bishops;[13] whether the Bishops
preserved their objection to the testimony of Garcia, and if they did, whether any
error was harmful; whether the trial court erred by excluding the impeachment
evidence against Small and whether the exclusion was harmful; whether the defendants
made an agreement that distorted their positions at trial;[14]
whether trial court’s exclusion of the evidence of such an agreement was
harmful; or whether there was cumulative error requiring a new trial.[15] 
Instead, we must presume that the parts of the record that were omitted support
the trial court’s judgment.[16]

Additionally,
regarding the Bishops’ second issue, the trial court’s judgment specifically
rendered judgment in favor of A.B. Auto Salvage (contradicting the Bishops’
claim that the trial court erroneously nonsuited this defendant), and in any
case, the Bishops cannot rely solely on a docket sheet entry to show that the
trial court ordered a nonsuit.[17]  Accordingly, we
overrule each of the Bishops’ issues.

Having
overruled the Bishops’ issues, we affirm the trial court’s judgment.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
DAUPHINOT
and MCCOY, JJ.; and CHARLES BLEIL (Senior Justice, Retired, Sitting by
Assignment).

 

DELIVERED:  December 1, 2011









[1]See Tex. R. App. P. 47.4.





[2]See Tex. R. App. P.
34.6(c)(1).





[3]Tex. R. App. P.
34.6(b)(1).





[4]Tex. R. App. P.
34.6(c)(1).





[5]W & F Transp., Inc.
v. Wilhelm, 208 S.W.3d 32, 38 (Tex. App.—Houston [14th Dist.] 2006, no
pet.).





[6]Id. (quoting Gardner
v. Baker & Botts, L.L.P., 6 S.W.3d 295, 297 (Tex. App.—Houston [1st
Dist.] 1999, pet. denied)).





[7]Tex. R. App. P. 34.6(c)(4).





[8]See Michiana Easy
Livin’ Country, Inc. v. Holten, 168 S.W.3d 777, 782 (Tex. 2005) (stating
that a reporter’s record is required only for proceedings in which evidence is
introduced and that “for nonevidentiary hearings, it is superfluous”).





[9]CMM Grain Co. v.
Ozgunduz, 991 S.W.2d 437, 439–40 (Tex. App.—Fort Worth 1999, no pet.); see
also Bennett v. Cochran, 96 S.W.3d 227, 229 (Tex. 2002) (allowing
consideration of the merits of Bennett’s claim when he requested a partial
record and filed his statement of points almost two months late but stating
that “[t]here is no question that, had Bennett completely failed to submit his
statement of points or issues, Rule 34.6 would require the appellate court to
affirm the trial court’s judgment”).





[10]Wilhelm, 208
S.W.3d at 38.





[11]See Mason v. Our Lady
Star of Sea Catholic Church, 154 S.W.3d 816, 818–21 (Tex. App.—Houston
[14th Dist.] 2005, no pet.) (denying the appellant’s motion to file a statement
of points when the appellant ordered a partial reporter’s record but did not
attempt to file a statement of points until after the appellees pointed out her
noncompliance with rule 34.6 in their brief, and affirming the trial court’s
judgment because without a complete record the court could not determine harm
and because the court had to presume the omitted portions of the record
supported the judgment).





[12]See id. at 821 (considering
the appellant’s complaint regarding jury charge error and observing that “[w]ithout
a record, an appellate court is hobbled; it cannot perform its review of the
record to assess for itself if error occurred and, if so, to assess whether the
error was harmless or reversible”).





[13]See, e.g., Sendejar
v. Alice Physicians & Surgeons Hosp., Inc., 555 S.W.2d 879, 888 (Tex.
Civ. App.—Tyler 1977, writ ref’d n.r.e.) (stating that “[w]hether the alleged
jury misconduct probably resulted in harm to the complaining party is a
question of law for the reviewing court after considering the record as a
whole”).





[14]See Elbaor v. Smith,
845 S.W.2d 240, 249–50 (Tex. 1992) (noting that Mary Carter agreements distort
the parties’ positions at trial and skew the trial process).





[15]See Tex. R. App.
P. 33.1 (requiring preservation of complaints on appeal); 44.1 (providing that
no judgment may be reversed on appeal for trial court error unless the
complained-of error probably caused the rendition of an improper judgment or
probably prevented the appellant from properly presenting the case to the court
of appeals); see also Holten, 168 S.W.3d at 783 (stating that if the
proceeding was evidentiary, “then a complaining party must present a record of
that hearing to establish harmful error”).





[16]CMM Grain Co., 991
S.W.2d at 439–40.





[17]See Guyot v. Guyot,
3 S.W.3d 243, 247 (Tex. App.—Fort Worth 1999, no pet.) (stating that when the
only evidence of a trial court’s order or judgment is found in a docket sheet,
“the docket sheet cannot be used to show the existence of an order or
judgment”); see also Dardas v. Fleming, Hovenkamp & Grayson, P.C.,
194 S.W.3d 603, 610 n.2 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)
(“Although a docket entry by the trial court indicates Dardas and Ogletree
nonsuited these claims, our record does not contain any instrument nonsuiting
claims, and a docket entry is not sufficient to nonsuit the claims.”).